Lawrance A. Bohm (SBN: 208716)
Kelsey K. Ciarimboli (SBN: 302611)
Zane E. Hilton (SBN: 305207)
Teal O. Miller (SBN: 311159)
**BOHM LAW GROUP, INC.**
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834
Telephone:  916.927.5574
Facsimile:   916.927.2046

Attorneys for Plaintiff,
ANU CHOPRA

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANU CHOPRA,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF SUTTER; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No:<br><br>**PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES:**<br><br>1.  **Hostile Work Environment Based on Race and National Origin (42 U.S.C. § 2000e; Gov. Code § 12940, subd. (j).);**<br>2.  **Discrimination Based on Race and National Origin (42 U.S.C. § 2000e; Gov. Code § 12940, subd. (a).);**<br>3.  **Retaliation in Violation of 42 U.S.C. § 2000e-3(a); Gov. Code § 12940, subd. (h);**<br>4.  **Retaliation in Violation of California Labor Code §§ 98.6 and 1102.5; and**<br>5.  **Failure to Prevent Discrimination, Harassment and Retaliation (Gov. Code § 12940, subd. (k).)**<br><br>**AND DEMAND FOR JURY TRIAL** |

Plaintiff, ANU CHOPRA, respectfully submits the instant Verified Complaint for Damages and Demand for Jury trial and alleges as follows:

///

///

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                           Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                         Zane E. Hilton, Esq.; Teal O. Miller, Esq.

Bohm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

### OVERVIEW OF THE CASE



Sutter County District Attorney Amanda Hopper ("DA Hopper") is bad at her job. On a high profile case, Hopper made a number of critical mistakes, including having improper off-the-record communications with a witness. She ultimately had to recuse herself from the case, and she assigned a career prosecutor, Anu Chopra, to replace her. However, when Chopra—a woman of South Indian descent with 10 years of experience as a Deputy District Attorney—insisted that Hopper disclose the contents of those communications to the defense, Hopper became irate, and reassigned Chopra to work the most junior of case assignments.



Hopper created a work environment where the most horrifying racist remarks became common water-cooler conversation. Comments like "Middle Easterners are all animals and rapists" were ignored by the DA's Office. DA Hopper stood by as her hand-picked choice for lead investigator, Jason Parker, engaged in a systematic campaign of racial harassment against a highly commended career prosecutor. She laughed along as Parker played a ringtone with an offensive stereotypical Indian accent in staff meetings. Parker sent veiled threats to Chopra's family and repeatedly insisted that she should find work elsewhere. Despite repeated complaints made directly to DA Hopper, no action was taken to stop the harassment.

Instead, DA Hopper participated in the harassment, and engaged in her own campaign to manufacture a false narrative about Chopra's job performance. In an effort to avoid further disclosures of her own misconduct, Hopper manufactured false reasons to force Chopra onto leave. DA Hopper included false information in a performance review, and drafted a counseling memorandum which falsely accused Chopra of insubordination. Ultimately, Chopra was unlawfully terminated. When Chopra challenged the termination, DA Hopper improperly appointed herself the hearing officer and denied Chopra an unbiased hearing to address this

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                                        Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                                    Zane E. Hilton, Esq.; Teal O. Miller, Esq.

1    unlawful termination.

2                                    **PARTIES AND JURISDICTION**

3         1.       Plaintiff ANU CHOPRA (hereinafter "CHOPRA" or "Plaintiff") was at all times

4    relevant to this action, a recruit, employee or wrongfully terminated employee of Defendant.

5    While employed by Defendant, and at all times relevant to this action, Plaintiff resided in Butte

6    County, California.

7         2.       Defendant    COUNTY    OF

8    SUTTER      (hereinafter   "DISTRICT

9    ATTORNEY'S OFFICE" or "Defendant") was

10   at all times relevant to this action a public entity

11   located at 463 2nd Street, Suite 102, Yuba City,

12   California 95991. Defendant was at all times a

13   relevant "Employer" as defined by 42 United

14   States Code section 2000e and Government

15   Code section 12926, subdivision (d).



16        3.       Venue and jurisdiction are proper in the Eastern District because the majority of

17   the events giving rise to this action took place in Sutter County; Defendant was at all times

18   mentioned herein, operating and doing business in Sutter County; Plaintiff worked for Defendant

19   in Sutter County; the damages sought exceed the jurisdictional minimum of this Court; and the

20   majority of witnesses reside and events occurred in Sutter County.

21        4.       These claims arise under Title VII of the Civil Rights Act of 1964, 42 United States

22   Code section 2000e, among other federal statutes. As such, this Court has federal question

23   jurisdiction under title 28 United States Code section 1331. Additionally, these claims lie on

24   questions of state law under the same case or controversy. As such, this Court has supplemental

25   jurisdiction under title 28 United States Code section 1367.

26   ///

27   ///

28   ///

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                     Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                        Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

5.      Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 50. Defendants DOES 1 through 50 are sued herein under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each Defendant sued under such fictitious names are in some manner responsible for the wrongs and damages as alleged herein. Plaintiff does not at this time know the true names or capacities of said Defendants, but prays that the same may be inserted herein when ascertained.

6.      At all times relevant, each and every Defendant was an agent and/or employee of each and every other Defendant. In doing the things alleged in the causes of action stated herein, each and every Defendant was acting within the course and scope of this agency or employment, and was acting with the consent, permission, and authorization of each remaining Defendant. All actions of each Defendant as alleged herein were ratified and approved by every other Defendant or their officers or managing agents.

## STATEMENT OF FACTS

7.      CHOPRA has been a practicing attorney for twelve (12) years, she spent ten (10) of those years as a Deputy District Attorney for Sutter County. CHOPRA is the mother of two (2) young children, an Indian woman, and a devout and involved member of the Sikh community.

8.      On or about March 1, 2006, CHOPRA was hired as a Deputy District Attorney for Sutter County.

9.      Throughout her career as a Deputy District Attorney for Sutter County, CHOPRA received positive performance evaluations, regular promotions, and multiple merit raises. In or around March 2010, CHOPRA was promoted to handling serious and high profile cases including crimes against children and all sexual assault crimes.

10.      In or around October 2013, Carl Adams retired and Jana McClung (hereinafter "McClung") managed the District Attorney's office as the Assistant District Attorney while the District Attorney seat remained vacant pending elections.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

Plaintiff's Verified Complaint for Damages and Demand for Jury Trial
*Chopra v. County of Sutter*                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                        Zane E. Hilton, Esq.; Teal O. Miller, Esq.

11.     In or around November 2013 to December 1, 2014, McClung was in charge of the District Attorney's office and acted as CHOPRA's supervisor.

12.     On or about June 3, 2014, an election was held for the Sutter County District Attorney. McClung ran against and lost to Amanda Hopper (hereinafter "DA Hopper"). When asked to endorse a candidate, CHOPRA endorsed DA Hopper.

13.     On or about December 1, 2014, DA Hopper began as District Attorney. McClung continued to work as Assistant District Attorney for the County. DA Hopper instructed CHOPRA to report directly to DA Hopper.

14.     In the course of her employment, CHOPRA worked with the Yuba City Police Department. On occasion she worked with Jason Parker (hereinafter "Parker"), then a Yuba City Police Detective. Parker later became District Attorney DA Hopper's Chief Investigator.

15.     In or around April 2015, Parker approached CHOPRA and jokingly threatened to post a video on an ISIS website posing CHOPRA's two and four-year old children as terrorists. In an effort to get Parker to back off, CHOPRA informed him that her children were mixed-race and had lighter skin, to which Parker responded that he would just make their skin tone darker to make them seem more like terrorists. These comments made her fear for the safety of her family. The threat to her children caused CHOPRA severe anxiety and she believed that Parker might follow through on his threats. Parker had a reputation for cruel and damaging "pranks" in the police department and CHOPRA feared Parker would target her children in this way. CHOPRA asked Parker not to target her children or make threats against them, but Parker simply laughed. CHOPRA asked Parker's co-worker if Parker was joking or if he would really do something this crazy. The coworker told CHOPRA that Parker is capable of following through on his threats.

16.     In or about July 2015, DA Hopper hired Parker as her Chief Investigator. DA Hopper did not trust her Assistant District Attorney McClung, her former opponent, and instead began to rely heavily on Parker. Chief Investigator Parker quickly became DA Hopper's confidante and advisor. On information and belief, Parker later became DA Hopper's lover. This relationship began while CHOPRA was employed with Sutter County.

///

Bohm Law Group, Inc.
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834

5

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                       Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

17.     In or around July 2015, DA Hopper assigned CHOPRA as lead attorney on a high profile case, *People v. McElfresh*. The defendant in *McElfresh* was the former Sutter County Sheriff's Captain. He was charged with serious felonies involving a minor. DA Hopper was the previous lead attorney on this case, but had made a number of errors, violated investigative protocols, and made herself a percipient witness. In fact, DA Hopper was subpoenaed as a witness in the trial by the defense. In taking over the case, CHOPRA discussed the errors with DA Hopper in a meeting that was attended by DA Investigator, Jim Bell (hereinafter "Bell"), and Lieutenant Brian Baker. CHOPRA requested that DA Hopper disclose all of her off-the-record discussions with a key witness. DA Hopper was angry and refused to make any such disclosure. DA Hopper stated that she had immunity and did not have to disclose any such discussions. CHOPRA was concerned that DA Hopper was concealing information from the defense. Instead of making a full disclosure, DA Hopper asked Bell to write up a memorandum which CHOPRA duly discovered to the defense. CHOPRA was uncomfortable in handling this case because of the errors made by DA Hopper and the fact that she was hiding information from CHOPRA. For months, CHOPRA struggled with the decision to return the case to DA Hopper for handling. CHOPRA discussed this struggle with investigator, Bell. CHOPRA was suspicious of DA Hopper's intentions for this case and wondered if DA Hopper was entangled with the defendant in some way. CHOPRA was as transparent as possible with the defense, but this conduct was not welcomed by DA Hopper. CHOPRA continued to report her concerns of misconduct to DA Hopper.

18.     In or about August 2015, DA Hopper changed CHOPRA's assignments to the most-junior assignment of theft and fraud cases. This was a major decrease in responsibility and prestige within the District Attorney's office. It caused a tremendous amount of stress for CHOPRA because DA Hopper did not tell her why she changed CHOPRA's assignment. CHOPRA was more confused about the change in assignment because people who worked with CHOPRA on her previous case assignments of sexual assault and crimes against children were always praising CHOPRA for her work, commitment, and dedication.

///

///

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                       Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

19.     In or around October 2015, DA Hopper's Chief Investigator, Parker, downloaded an offensive ringtone to his cellphone of a man speaking with a heavy Indian/Middle Eastern accent and repeatedly saying, "Pick up the telephone!" The voice and tone mocked the accent of people from Southeast Asia. The first time Chief Investigator Parker played the ringtone was in the office during a work day. He played it aloud so everyone could hear. Everyone laughed and CHOPRA was subjected to unwelcome attention as she was the only person of Southeast Asian descent in the office. Initially, CHOPRA did her best to ignore this inappropriate behavior and not react in hopes that it would stop. However, Chief Investigator Parker continued to play this ringtone numerous times around DA Hopper and several of CHOPRA's co-workers. They all laughed at CHOPRA's expense. CHOPRA asked Parker on numerous occasions to stop playing the ringtone and remove it from his telephone. CHOPRA expressed that, while others may have found it funny the first few times, it was no longer appreciated or acceptable. However, DA Hopper's Chief Investigator, Parker, disregarded CHOPRA's requests. CHOPRA was hopeful that since DA Hopper witnessed most of Parker's conduct, that she would exercise her authority to make it clear that such behavior would not be tolerated in the District Attorney's Office. Instead, DA Hopper joined in laughter each time her Chief Investigator behaved this way. By doing so, DA Hopper encouraged Chief Investigator Parker and condoned his behavior. DA Hopper's laughter and failure to reprimand gave this behavior tacit approval.

20.     In or around October 2015, Chief Investigator Parker approached CHOPRA and told her that she should quit and find work somewhere else. CHOPRA never heard Parker ask similar questions of anyone else, and felt targeted as the only person of East Indian descent in the office. CHOPRA was shocked DA Hopper's Chief Investigator would suggest she work elsewhere. These comments offended and upset CHOPRA. Thereafter, on a regular basis, Parker would ask CHOPRA if she had plans to seek employment elsewhere. These comments made CHOPRA angry because she had devoted ten (10) years of her life and career to the Sutter County District Attorney's Office. It was humiliating to hear from a new employee that CHOPRA did not belong there.

///

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                              Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                 Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

21.     In or around November 2015, DA Hopper's Chief Investigator continued to play the offensive ringtone in the office and in front of CHOPRA. CHOPRA did not know that DA Hopper and Parker were in a relationship such that he would have motivation to please his confidential paramour.

22.     In or around November 2015, Chief Investigator Parker sent a text message to CHOPRA's husband from his Sutter County issued cell phone stating, "I hate your wife." Parker had never met CHOPRA's husband and located his number through an internet search. When CHOPRA's husband saw the text from a number he did not recognize, he immediately feared for CHOPRA's safety. CHOPRA's husband was panicked and called CHOPRA to see if she was safe and what was going on at CHOPRA's work. CHOPRA and her husband felt incredibly threatened and feared for their family's safety. After his threats to CHOPRA's children, and now the escalation of direct, threatening communication with CHOPRA's husband, CHOPRA felt she must address Parker's actions. CHOPRA told Chief Investigator Parker, in front of DA Hopper, not to message her husband. Instead of taking any kind of action, DA Hopper simply laughed along with her Chief Investigator.

23.     In or around November 2015, DA Hopper's Chief Investigator and confidante, Parker, again approached CHOPRA and told her that it would be better if she quit and found work somewhere else, and told her that she had "nowhere to go in the office," indicating that CHOPRA would not be promoted.

24.     In or around early December 2015, CHOPRA attempted to report the Chief Investigator's harassing conduct of continuously playing the offensive ringtone to DA Hopper by requesting that Chief Investigator Parker play it in DA Hopper's presence. However, DA Hopper did not take any action to reprimand Parker, but instead laughed at CHOPRA.

25.     In or around December 2015, Parker continued to harass CHOPRA by telling her to find work elsewhere.

26.     In or around January 2016, CHOPRA approached Parker and requested that he cease his harassing behavior. Parker responded by dismissing CHOPRA's request and telling her she should leave and go work someplace else.

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                          Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                             Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

27.     On or about January 11, 2016, Chief Investigator Parker asked CHOPRA to call his cell phone in a meeting attended by CHOPRA, DA Hopper, Deputy District Attorney Clint Curry, and three (3) members of an outside agency. This meeting took place in DA Hopper's office. CHOPRA suspected that calling Parker would cause the offensive ringtone to play and knew that Parker wanted to make fun of her, so she refused. After CHOPRA's refusal to call him, Parker played the ringtone using his cell phone. Everyone, including DA Hopper, laughed at CHOPRA's expense. CHOPRA was incredibly offended and embarrassed by the Chief Investigator's conduct because everyone in DA Hopper's office was laughing at her.

28.     Later that day, Chief Investigator Parker called CHOPRA and left a voicemail on her phone attempting to speak in an Indian/Middle Eastern accent, mimicking the ringtone. A fellow co-worker was present when he called CHOPRA's cell phone and left that voicemail. CHOPRA felt targeted, humiliated, and harassed.

29.     In or around January 2016, Chief Investigator Parker made fun of CHOPRA's Indian accent and made comments such as, "In America we speak in English." He also called CHOPRA Middle Eastern, going on to state, "Middle Easterners are all animals and rapists." DA Hopper's Personal Assistant, Sheri Roben (hereinafter "Roben"), also joined in making derogatory remarks about Indians. Roben said the Sikh patrons in Yuba City are like animals and throw garbage on the street like dogs. On more than one occasion, Roben expressed her disgust for the annual religious Sikh parade. Roben stated she lives near the Sikh temple and it is a nuisance. CHOPRA felt insulted and attacked as a member of the Sikh temple and a devoutly religious person. DA Hopper heard some of these comments but nonetheless allowed such banter and hostile attitude towards CHOPRA, the only East Indian employee in the District Attorney's Office.

30.     On or about February 1, 2016, CHOPRA asked if Parker still had the offensive ringtone set to CHOPRA's contact for incoming calls and text messages. Parker grinned and stated that he did. CHOPRA demanded Parker remove the ringtone because it was not funny and she did not appreciate it. Parker simply smiled and disregarded CHOPRA's request.

///

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                              Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

31.     On or about February 1, 2016, CHOPRA and Chief Investigator Parker were assigned to set up the scene for a sting operation with another agency. Parker insultingly commented that because CHOPRA was Indian, she would not be able to help with the set up. CHOPRA told him to stop making derogatory comments about her race and again demanded that Parker remove the ringtone; he refused.

32.     On or about February 3, 2016, CHOPRA received a call from a Federal Task Force Agent, asking if DA Hopper was conducting a sting operation without following the proper protocol. The Agent had concerns that DA Hopper and her Chief Investigator, Parker, violated operational protocols. CHOPRA referred the agent to DA Hopper for answers.

33.     In or around February 2016, CHOPRA contacted her union regarding the ongoing harassment and discrimination by DA Hopper and Chief Investigator Parker. The union recommended CHOPRA draft a written memo to DA Hopper demanding the harassing and discriminating behavior stop. CHOPRA was fearful of retaliation if she complained and was under an immense level of stress. The union assured CHOPRA of her rights and protections afforded to her through County rules and regulations, as well as state and federal laws.

34.     On or about February 16, 2016, DA Hopper gave CHOPRA her annual performance review. This review included false statements about CHOPRA's performance, such as increased filing errors and issues with communication. CHOPRA was shocked because it had baseless accusations unsupported by any facts. CHOPRA asked DA Hopper if she thought this evaluation was accurate and fair. DA Hopper stated that it was not and said that the review was harsh. CHOPRA asked that DA Hopper prepare a fair performance review. DA Hopper said she would and took the evaluation from CHOPRA. CHOPRA could not make sense of the review because DA Hopper had regularly praised CHOPRA for her work to outside agencies, and even to a District Attorney in a neighboring county. The annual performance review omitted all of CHOPRA's accomplishments. DA Hopper never amended the performance review and asked CHOPRA to sign the original anyway. CHOPRA refused.

///

///

Plaintiff's Verified Complaint for Damages and Demand for Jury Trial
*Chopra v. County of Sutter*                                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                       Zane E. Hilton, Esq.; Teal O. Miller, Esq.

35.     On or about February 16, 2016, DA Hopper gave CHOPRA a counseling memo. The memo accused CHOPRA of disclosing DA Hopper's sting operation to the Federal Task Force Agent. DA Hopper previously discussed this issue with the Federal Task Force Agent and was informed that the source was an outside party, not CHOPRA. Despite this knowledge, DA Hopper prepared and gave CHOPRA this counseling memo with false accusations.

36.     On or about February 19, 2016, CHOPRA told DA Hopper that the counseling memo was legally and factually deficient, and that the evaluation was unfair. CHOPRA denied all allegations in the counseling memo and demanded that DA Hopper provide proof. DA Hopper declined to provide proof.

37.     On or about February 24, 2016, CHOPRA was in a jury trial. Chief Investigator Parker came to court and took pictures of CHOPRA without her knowledge while the court was in session and she was performing her duties as a prosecutor. Parker did not get permission from the court or CHOPRA to take the photos. When CHOPRA discovered that Parker took pictures of her in court, she asked him to stop and to delete the photos he already took because she felt it was inappropriate. Parker laughed off CHOPRA's complaints.

38.     In or around early March 2016, CHOPRA was preparing for trial in another case when DA Hopper's Chief Investigator, Parker, approached CHOPRA and asked if the defendant she was prosecuting was Middle Eastern. CHOPRA replied that she was unsure. Chief Investigator Parker stated that, "all Middle Easterners are rapists." CHOPRA was speechless and felt very intimidated by this language.

39.     On or about March 11, 2016, DA Hopper called CHOPRA into her office and stated that CHOPRA was correct about the counseling memo, in that CHOPRA did not discuss the sting operation with the Federal Task Force Agent. DA Hopper represented to CHOPRA that she would destroy the memo, and did so in CHOPRA's presence by shredding it. Later, CHOPRA discovered that DA Hopper secretly kept a copy of the memo and placed it in CHOPRA's personnel file without CHOPRA's knowledge.

///

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                          Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                         Zane E. Hilton, Esq.; Teal O. Miller, Esq.

40.     On or about March 15, 2016, CHOPRA was in a jury trial. DA Hopper and Chief Investigator Parker came to the courtroom and took photos and video of CHOPRA while she was in court performing her duties as a prosecutor. CHOPRA saw Parker taking her picture as he sat next to DA Hopper. CHOPRA asked that Parker stop, but Parker just laughed and told CHOPRA that he was in the courtroom to protect CHOPRA from the Middle Eastern defendant, insinuating again that the defendant was a rapist and calling him an animal. DA Hopper laughed and made light of the situation. Parker joked with DA Hopper that he would send the video of CHOPRA to a friend. They both laughed at CHOPRA's expense. CHOPRA was offended and embarrassed by this unwanted attention. She felt self-conscious and harassed.

41.     On or about March 23, 2016, the attorney for the victim in the *McElfresh* case approached CHOPRA in court. This attorney reported that a defense investigator contacted the victim after he had forbidden any contact with his client, absent his and the victim's consent. CHOPRA reported this contact to DA Hopper and her superiors.

42.     On or about March 25, 2016, CHOPRA attended a meeting with DA Hopper, Senior Deputy District Attorney Cameron King (hereinafter "King"), McClung, and others to discuss a situation in which the defense investigator contacted the victim in the *McElfresh* case. At the meeting, CHOPRA and her superiors decided there was no violation. However, CHOPRA's superiors asked her to inform the Judge, by way of a pre-trial motion. CHOPRA complied with their directive and prepared a pre-trial motion. She showed it to her superior who approved it.

43.     On or about March 25, 2016, CHOPRA emailed DA Hopper requesting her evaluation, copying the union on the email.

44.     On or about March 28, 2016, CHOPRA received the original unchanged copy of her evaluation and a letter from DA Hopper insisting that she sign the evaluation.

45.     On or about April 1, 2016, CHOPRA filed the pre-trial motion that had been approved by her superior, King. The motion included information about how and why there had been contact between the defense investigator and the victim. At this point, the matter was resolved.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                          Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                             Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

46.     On or about April 5, 2016, CHOPRA submitted a written response to her annual performance evaluation to DA Hopper, as well as the signed evaluation, and sent a copy to the Sutter County Human Resources Department. In her response, CHOPRA complained that the evaluation was factually incorrect. She further complained that in their February 19, 2016 meeting, DA Hopper represented that she would have the evaluation corrected, but had since reversed her position. CHOPRA attached a list of all her accomplishments, commendations, and achievements. CHOPRA personally delivered a copy to DA Hopper. A few minutes later, DA Hopper seemed visibly upset and asked Parker to come to her office. They were behind closed doors for a while. CHOPRA became worried that DA Hopper would retaliate against her for filing a response.

47.     That same day, DA Hopper's Chief Investigator drafted three (3) written memos at DA Hopper's request alleging that CHOPRA violated Sutter County personnel rules. One of these complaints cited directly to the resolved issue of the defense investigator contacting a victim. Both DA Hopper and Chief Investigator Parker knew that this issue was resolved as they were both involved in its resolution.

48.     On or about April 7, 2016, CHOPRA was preparing for the *McElfresh* trial when Chief Investigator Parker unexpectedly removed CHOPRA's trial investigator from the case. Later that day, DA Hopper's Personal Assistant, Roben, asked CHOPRA for her motions *in limine* so DA Hopper could look them over. DA Hopper had never asked to look at CHOPRA's pre-trial motions before. Since the delivery of CHOPRA's response to her evaluation, DA Hopper stopped talking to CHOPRA and made a concerted effort to ignore CHOPRA at work.  CHOPRA was under immense stress at this change in attitude. CHOPRA suspected that DA Hopper and Chief Investigator Parker were setting her up. CHOPRA was suffering from panic and anxiety that DA Hopper was after her, and felt that there was a target on her back.

49.     On or about April 7, 2016, CHOPRA feared that if she filed her discrimination complaint, DA Hopper would find a way to terminate her from employment.  By this time, CHOPRA lost sleep and was constantly in a state of fear and panic. CHOPRA was terrified something bad was going to happen.

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                        Zane E. Hilton, Esq.; Teal O. Miller, Esq.

50.     On or about April 7, 2016, CHOPRA received a letter from Sutter County employee Tony Kildare (hereinafter "Kildare"), the forensic interviewer for law enforcement on the *McElfresh* matter. Kildare's letter memorialized his witnessing DA Hopper having off-the-record conversations with a witness. Kildare expressed his concerns surrounding DA Hopper's actions. CHOPRA went to DA Hopper and told DA Hopper about Kildare's letter detailing DA Hopper's misconduct and reported that this letter would have to be provided to the defense. DA Hopper appeared irritated and upset at CHOPRA. After reporting this to DA Hopper and in order to comply with her *Brady* obligations, CHOPRA instructed staff at the District Attorney's Office to immediately produce the letter as discovery to defense. This letter was never produced.

51.     On or about April 8, 2016, DA Hopper emailed CHOPRA requiring her to attend a meeting at 11:00 a.m. CHOPRA asked what the purpose of the meeting was, but DA Hopper refused to tell her. CHOPRA informed her union representative about it. At the meeting, DA Hopper, McClung, the Assistant County Counsel, and the Assistant Human Resources Director put CHOPRA on administrative leave. They forced CHOPRA to sign the Notice of Leave and denied her representation. CHOPRA was not given a direct answer for why she was being put on leave. CHOPRA was left in utter shock and dismay.

52.     On or about April 11, 2016, DA Hopper used CHOPRA's administrative leave to continue the *McElfresh* trial, in which DA Hopper had previously been subpoenaed to testify by the defense.

53.     On or about April 13, 2016, CHOPRA received a call from a newspaper reporter asking if CHOPRA had been put on administrative leave. CHOPRA did not respond, but an article was published about her administrative leave later that day.

54.     On or about April 19, 2016, CHOPRA submitted a harassment and discrimination complaint to County Human Resources.

55.     On or about April 21, 2016, the Office of the County Counsel sent CHOPRA a letter indicating that an investigation into CHOPRA's complaints of discrimination and harassment would be performed by Chuck Lebak (hereinafter "Lebak").

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                       Zane E. Hilton, Esq.; Teal O. Miller, Esq.

56.     On or about April 21, 2016, the County hired Lebak to investigate the allegations stated in the Notice of Administrative Leave against CHOPRA. During one of his interviews, Lebak stated that he was not hired to investigate CHOPRA's discrimination and harassment complaints and that, at the County Counsel Jean Jordan's direction, he was not going to focus on CHOPRA's discrimination complaint. In his investigation, Lebak mocked CHOPRA's claims of harassment and discrimination and accused her of deflecting. Lebak made comments to CHOPRA such as, "she was caught with her hand in the cookie jar." CHOPRA felt attacked by this conduct and was shocked and dismayed that her complaints were not being investigated.

57.     On or about April 29, 2016, Lebak interviewed CHOPRA for four (4) hours. He was rude and derogatory in this meeting, stating that CHOPRA was disliked and that she should just leave.

58.     On or about May 12, 2016, a judge heard a motion for a new trial in a case CHOPRA had previously prosecuted. The court denied the motion and found that there was no prosecutorial misconduct. DA Hopper denied CHOPRA the right to be present at the hearing and CHOPRA did not get an opportunity to present her side to the court. DA Hopper ensured that CHOPRA was effectively prevented from appearing in her own defense by placing CHOPRA on administrative leave. Despite the finding of no misconduct, DA Hopper used CHOPRA's participation in this case as a basis for her termination.

59.     In or around mid-May 2016, CHOPRA asked County Counsel why none of her witnesses concerning her discrimination and harassment complaints had been interviewed. After which, Lebak began interviewing CHOPRA's witnesses.

60.     On or about May 23, 2016, Lebak interviewed CHOPRA's husband regarding the text message from Chief Investigator Parker. Lebak stated to CHOPRA's lawyer that he did not find any reason to keep CHOPRA on leave and that CHOPRA should be asked to return to work. He also made a comment to one of the witnesses that Parker's discriminatory, harassing, and racist conduct was disgusting and serious and that he should be fired. Parker was a probationary employee with Sutter County throughout this period; DA Hopper was his direct supervisor.

///

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                                          Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                            Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

1    61.    On or about June 6, 2016, County Counsel told CHOPRA's lawyer that CHOPRA

2  needed to resign; CHOPRA refused.

3    62.    On or about June 6, 2016, CHOPRA filed a complaint with the DFEH and received

4  an immediate Right to Sue letter.

5    63.    On or about June 21, 2016, CHOPRA filed a complaint with the EEOC.

6    64.    On or about July 11, 2016, CHOPRA received a Notice of Intent to Terminate. A

7  *Skelly* hearing was scheduled for August 16, 2016, at 3:00 p.m. DA Hopper appointed herself to

8  act as the *Skelly* officer.

9    65.    In the Notice of Intent to Terminate, DA Hopper relied on a nonexistent

10  "department policy" requiring Deputy District Attorneys to inform DA Hopper if any allegations

11  of prosecutorial misconduct are made against the Deputy District Attorney. DA Hopper claimed

12  that CHOPRA violated this "department policy," even though DA Hopper acknowledged in the

13  investigation performed by Lebak that no such policy existed. Furthermore, Senior Deputy

14  District Attorney King also confirmed in his interview with Lebak that he was unaware of any

15  such policy. CHOPRA suspected and was distressed that DA Hopper appeared to be

16  manufacturing policy to bolster her case and had previously stated that no policy existed. DA

17  Hopper knew that CHOPRA's personnel record was very good and there was no evidence of

18  progressive discipline. In her ten (10) years as a Deputy District Attorney, CHOPRA had not

19  received any level of counseling or discipline. Instead, she had commendations and letters of

20  compliment for her work and dedication. The only way to find cause for termination was to

21  manufacture policies and evidence. This behavior scared CHOPRA because if an elected District

22  Attorney was willing to manufacture evidence to get her way in an administrative hearing,

23  CHOPRA feared what DA Hopper would do to win in court.

24    66.    On or about August 12, 2016, CHOPRA received a Right to Sue letter from the

25  EEOC.

26    67.    On or about August 12, 2016, CHOPRA sent a letter to the County Human

27  Resources, Chief Administrative Officer Curt Coad, and County Counsel Jean Jordan, raising

28  serious concerns about the propriety and efficacy of the investigation conducted by Lebak.

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                                     Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                        Zane E. Hilton, Esq.; Teal O. Miller, Esq.

CHOPRA pointed out several inconsistencies, misstatements, and false statements listed in Lebak's report. Through her lawyer, CHOPRA demanded a fair, neutral, and unbiased investigation and asked that Lebak's unlawful investigation and report be disregarded in its entirety. The letter also called into questions DA Hopper's fitness to serve as the *Skelly* officer in CHOPRA's termination due to CHOPRA's complaints of harassment and discrimination against DA Hopper, DA Hopper's dishonest conduct throughout the administrative process, and DA Hopper's involvement in the factual disputes. CHOPRA complained that DA Hopper was inappropriate as a *Skelly* officer because she was not a neutral, uninvolved party and had an interest in the outcome.

68. On or about August 13, 2016, the County denied CHOPRA's request for a neutral *Skelly* officer and did not respond to the serious concerns raised about Lebak and his investigation.

69. On or about August 16, 2016, the *Skelly* hearing was held. CHOPRA filed a written *Skelly* response detailing the falsehoods in the allegations contained in the Notice of Intent to Terminate.

70. On or about August 19, 2016, as the *Skelly* officer, DA Hopper upheld her own proposal to terminate CHOPRA.

71. On or about November 4, 2016, CHOPRA and SUTTER COUNTY entered into a tolling agreement which tolled the statute of limitations for CHOPRA's DFEH and EEOC causes of action until May 9, 2017, with the option of withdrawing after thirty (30) days written notice.

72. On or about February 28, 2017, CHOPRA provided thirty (30) day notice of intent to withdraw from the tolling agreement.

## FIRST CAUSE OF ACTION

### Hostile Work Environment Based on Race, National Origin, and Religion

### (42 U.S.C. § 2000e-2; Gov. Code § 12940, subd. (j).)

73. The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

74. This claim is asserted against Defendant.

75. At all relevant times, Plaintiff was an employee of Defendant.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

17

Plaintiff's Verified Complaint for Damages and Demand for Jury Trial
*Chopra v. County of Sutter*                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                        Zane E. Hilton, Esq.; Teal O. Miller, Esq.

76.     At all times relevant to this matter, Title VII of the Civil Rights Act, 42 United States Code section 2000e-2, was in full force and effect and binding on Defendant. Title VII of the Civil Rights Act, 42 United States Code section 2000e-2(a) reads, "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

77.     At all times relevant to this matter, the Fair Employment and Housing Act and Government Code section 12940, were in full force and effect and binding on Defendant. Government Code section 12940, subdivision (j), reads: "It is an unlawful employment practice . . . [f]or an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation, to harass an employee, an applicant, or a person providing services pursuant to a contract."

78.     Defendant was at all material times an "employer" within the meaning of 42 United States Code section 2000e-2 and Government Code section 12926, subdivision (c), and, as such, barred from illegal harassment as set forth in 42 United States Code section 2000e-2 and Government Code section 12940, subdivision (j).

79.     Plaintiff was subjected to unwanted harassing conduct because of her race, national origin, and religion, including threatening comments because of Plaintiff's race and mocking of her accent. These deplorable acts were persistent throughout Plaintiff's employment with Defendant. This harassing conduct was conducted by Defendant and its managing agents and employees, who created an environment that, among other things, tolerated and encouraged harassment against Plaintiff that impacted the terms and conditions of Plaintiff's employment including, but not limited to, Plaintiff's change in job duties, unfair *Skelly* hearing, false performance reviews, administrative leave, ultimate termination, and overall hostile terms and

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

18

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                              Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                 Zane E. Hilton, Esq.; Teal O. Miller, Esq.

conditions of her employment. The statements and conduct on the part of Defendant and its managing agents and employees complained of herein represent a violation of Title VII of the Civil Rights Act, title 42 United States Code section 2000e-2, Government Code section 12940, subdivision (j), and Title 2 of the California Code of Regulations sections 11019 and 11020.

80.     A reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile or abusive. The environment of harassment was severe and/or pervasive.

81.     The conduct of Defendant and its managing agents and employees was a substantial factor in causing Plaintiff's harm.

82.     As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including back pay, reimbursement of out-of-pocket expenses and any such other relief that this Court deems proper.

83.     As an actual and proximate result of Defendant's willful and intentional harassment, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

84.     As an actual and proximate result of Defendant's aforementioned acts, Plaintiff suffered physical injury. Plaintiff experienced sleeplessness, insomnia, possible physical changes, upset stomach, nausea, and headaches. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

85.     As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other emotional distress. Plaintiff claims general damages for mental distress in an amount according to proof at time of trial.

## SECOND CAUSE OF ACTION

### Discrimination Based on Race, National Origin, and Religion

### (42 U.S.C. § 2000e-2; Gov. Code § 12940, subd. (a).)

86.     The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

19

Plaintiff's Verified Complaint for Damages and Demand for Jury Trial
*Chopra v. County of Sutter*                                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                                  Zane E. Hilton, Esq.; Teal O. Miller, Esq.

87.     This claim is asserted against Defendant.

88.     At all relevant times, Plaintiff was an employee of Defendant.

89.     At all times relevant to this matter, Title VII of the Civil Rights Act, 42 United States Code section 2000e-2 and Government Code section 12940, subdivision (a), were in full force and effect and binding on Defendant. Title VII of the Civil Rights Act, 42 United States Code section 2000e-2(a) reads, "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."

90.     At all times relevant to this matter, the Fair Employment and Housing Act and Government Code section 12940 was in full force and effect and binding on Defendants. Government Code section 12940, subdivision (a), reads: "It is an unlawful employment practice... [f]or an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

91.     Defendant was at all material times an "employer" within the meaning of 42 United States Code section 2000e-2 and Government Code section 12926, subdivision (c), and, as such, barred from illegal harassment as set forth in 42 United States Code section 2000e-2 and Government Code section 12940, subdivision (j).

92.     Plaintiff's change in job duties, unfair *Skelly* hearing, false performance reviews, administrative leave, ultimate termination, and overall hostile terms and conditions of her employment were caused by a racial animus towards Plaintiff.  Plaintiff was subjected to unwanted discrimination and treated differently because of her race, national origin, and religion. This discrimination was conducted by Defendant who created an environment that, among other

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                        Zane E. Hilton, Esq.; Teal O. Miller, Esq.

things, tolerated and encouraged discrimination based on race, national origin, and/or religion, thereby materially and negatively impacting the terms and conditions of Plaintiff's employment. The statements and conduct on the part of Defendants complained of herein represent a violation of Title VII of the Civil Rights Act, 42 United States Code section 2000e-2 and Government Code section 12940, subdivision (a).

93. Plaintiff's race, national origin, and religion were a substantial motivating reason for her termination.

94. The conduct of Defendant and its managing agents and employees was a substantial factor in causing Plaintiff's harm.

95. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including back pay, reimbursement of out-of-pocket expenses and any such other relief that this Court deems proper.

96. As an actual and proximate result of Defendant's discrimination, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

97. As an actual and proximate result of Defendant's aforementioned acts, Plaintiff suffered physical injury. Plaintiff experienced sleeplessness, insomnia, possible physical changes, upset stomach, nausea, and headaches. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

98. As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other emotional distress. Plaintiff claims general damages for mental distress in an amount according to proof at time of trial.

## THIRD CAUSE OF ACTION

### Retaliation

### (42 U.S.C. § 2000e; Gov. Code § 12940, subd. (h).)

99. The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

Plaintiff's Verified Complaint for Damages and Demand for Jury Trial
*Chopra v. County of Sutter*                                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                                       Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

1   100.   This claim is asserted against Defendant.

2   101.   At all relevant times, Plaintiff was an employee of Defendant.

3   102.   At all times relevant to this matter, Title VII of the Civil Rights Act, 42 United

4   States Code section 2000e and Government Code section 12940, subdivision (h), were in full

5   force and effect and binding on Defendant.  Title VII, 42 U.S.C. § 2000e-3(a) reads, "It shall be

6   an unlawful employment practice for an employer to discriminate against any of his employees

7   . . . because he has opposed any practice made an unlawful employment practice by this

8   subchapter, or because he has made a charge, testified, assisted, or participated in any manner in

9   an investigation, proceeding, or hearing under this subchapter."

10   103.   At all times relevant to this action, it was unlawful under Government Code section

11   12940, subdivision (h) and Title 2 of the California Code of Regulations section 7287.8 for

12   Defendant to retaliate against Plaintiff for complaining about illegal practices. Defendant violated

13   Government Code section 12940, subdivision (h) and Title 2 of the California Code of

14   Regulations section 7287.8 by retaliating against Plaintiff for her complaints regarding hostile

15   working conditions (harassment) and workplace discrimination based on race, national origin,

16   and religion  by, among other things, changing Plaintiff's job duties, subjecting her to an unfair

17   *Skelly* hearing, creating false performance reviews, placing her on administrative leave, ultimately

18   terminating her employment, and creating the overall hostile terms and conditions of her

19   employment.

20   104.   Plaintiff engaged in protected activity when she made complaints that she was

21   being treated differently based on her race, national origin, and religion.  These protected activities

22   include, but are not limited to: making complaints to County Human Resources; making

23   complaints to her union; filing a complaint with the DFEH; and filing a complaint with the EEOC.

24   105.   Plaintiff's complaints regarding illegal harassment, discrimination, and retaliation

25   were substantial motivating reasons for Defendant the adverse employment actions against

26   Plaintiff, including but not limited to Plaintiff's change in job duties, unfair *Skelly* hearing, false

27   performance reviews, administrative leave, ultimate termination, and the overall hostile terms and

28   conditions of her employment.

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                     Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                        Zane E. Hilton, Esq.; Teal O. Miller, Esq.

106.   Defendant's conduct was a substantial factor in causing Plaintiff's harm.

107.   The conduct of Defendant and its managing agents and employees was a substantial factor in causing Plaintiff's harm.

108.   As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Government Code section 12926, subdivision (a), including back pay, reimbursement of out-of-pocket expenses and any such other relief that this Court deems proper.

109.   As an actual and proximate result of Defendant's retaliation, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

110.   As an actual and proximate result of Defendant's aforementioned acts, Plaintiff suffered physical injury. Plaintiff experienced sleeplessness, insomnia, possible physical changes, upset stomach, nausea, and headaches. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

111.   As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other emotional distress. Plaintiff claims general damages for mental distress in an amount according to proof at time of trial.

## FORTH CAUSE OF ACTION

### Retaliation in Violation of Labor Code §§ 98.6 & 1102.5

112.   The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

113.   This cause of action is asserted against Defendant.

114.   At all relevant times, Plaintiff was an employee of Defendant.

115.   Labor Code section 98.6 states that an employer may not "discharge an employee or in any manner discriminate against any employee . . . because the employee . . . has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights, which are under the jurisdiction of the Labor Commissioner." Labor Code section 1102.5, subdivision (b) states that "[a]n employer, or any person acting on behalf of

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                        Zane E. Hilton, Esq.; Teal O. Miller, Esq.

the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Labor Code section 1102.5, subdivision (c) states that an "employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

116.   Plaintiff made numerous protected complaints to persons with authority above her in Sutter County regarding improper interviews of witnesses in criminal trials, a biased *Skelly* hearing, the safety of herself and her family, the unsafe working environment, hostile working conditions (harassment) and workplace discrimination based on race, national origin, and religion. These persons had the authority to investigate, discover, or correct the noncompliance. These activities violated statutes including Labor Code sections 6310, 6311, 6400, 6401, 6402, 6403, 6404, and 6405, and Government Code section 12945.1.

117.   Defendant violated Labor Code sections 98.6 and 1102.5, when it unlawfully retaliated against Plaintiff by taking adverse employment actions against Plaintiff, including but not limited to, Plaintiff's change in job duties, unfair *Skelly* hearing, false performance reviews, administrative leave, ultimate termination, and the overall hostile terms and conditions of her employment.

118.   Plaintiff's protected complaints were a substantial motivating reason for Defendant's decision to subject her to and unfair *Skelly* hearing, false performance reviews, administrative leave, ultimate termination, and the overall hostile terms and conditions of her employment.

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                      Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                         Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

119.   The conduct of Defendant and its managing agents and employees was a substantial factor in causing Plaintiff's harm.

120.   As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, in an amount in excess of the jurisdiction of this Court.

121.   As an actual and proximate result of Defendant's retaliation, Plaintiff has lost wages, benefits, and other out-of-pocket expenses.

122.   As an actual and proximate result of Defendant's aforementioned acts, Plaintiff suffered physical injury. Plaintiff experienced sleeplessness, insomnia, possible physical changes, upset stomach, nausea, and headaches. Plaintiff claims general damages for physical injury in an amount according to proof at time of trial.

123.   As an actual and proximate result of Defendant's aforementioned acts, Plaintiff also suffered mental upset and other emotional distress. Plaintiff claims general damages for mental distress in an amount according to proof at time of trial.

## FIFTH CAUSE OF ACTION

### Failure to Prevent Discrimination, Harassment, and Retaliation

### (Gov. Code § 12940, subd. (k).)

124.   The allegations set forth in this complaint are hereby re-alleged and incorporated by reference.

125.   This cause of action is asserted against Defendant.

126.   At all relevant times, Plaintiff was an employee of Defendant.

127.   As an employer, pursuant to Government Code section 12926, subdivision (d), Defendant has a duty to prevent unlawful harassment and discrimination, including retaliation. Defendant knew or should have known about the harassment and discrimination based on race, national origin, and religion of Plaintiff as set forth above. Defendant failed to implement adequate training, policies, or instructions that would have prevented the aforementioned harassment, discrimination, and retaliation of Plaintiff. Defendant breached its duty to prevent the harassment, discrimination, and retaliation of Plaintiff. Accordingly, Defendant violated

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

25

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                        Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

1   Government Code section 12940, subdivision (k) and the California Code of Regulations, title 2,

2   section 11019, subdivision (b)(3).

3     128. Plaintiff was subjected to harassment, discrimination, and/or retaliation in the

4   course of her employment with Defendant as described above.

5     129. Defendant failed to take all reasonable steps to prevent the harassment,

6   discrimination, and/or retaliation.

7     130. The conduct of Defendant and its managing agents and employees was a

8   substantial factor in causing Plaintiff's harm.

9     131. As an actual and proximate result of the aforementioned violations, Plaintiff has

10  been harmed in an amount according to proof, in an amount in excess of the jurisdiction of this

11  Court. Plaintiff also seeks "affirmative relief" or "prospective relief" as defined by Government

12  Code section 12926, subdivision (a), including back pay, reimbursement of out-of-pocket

13  expenses and any such other relief that this Court deems proper.

14    132. As an actual and proximate result of Defendant's failure to prevent harassment,

15  discrimination, and/or retaliation, Plaintiff has lost wages, benefits, and other out-of-pocket

16  expenses.

17    133. As an actual and proximate result of Defendant's aforementioned acts, Plaintiff

18  suffered physical injury. Plaintiff experienced sleeplessness, insomnia, possible physical changes,

19  upset stomach, nausea, and headaches. Plaintiff claims general damages for physical injury in an

20  amount according to proof at time of trial.

21    134. As an actual and proximate result of Defendant's aforementioned acts, Plaintiff

22  also suffered mental upset and other emotional distress. Plaintiff claims general damages for

23  mental distress in an amount according to proof at time of trial.

24           **<u>PRAYER FOR RELIEF</u>**

25    WHEREFORE, Plaintiff demands judgment against the Defendant and any other

26  Defendants who may be later added to this action as follows:

27    1. For compensatory damages, including, but not limited to lost wages and non-

28  economic damages in the amount according to proof;

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*      Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:             Zane E. Hilton, Esq.; Teal O. Miller, Esq.

1  2.  For attorneys' fees and costs pursuant to all applicable statues or legal principles;

2  3.  For cost of suit incurred;

3  4.  For prejudgment interest on all amounts claimed pursuant to Civil Code section(s)

4  3287 and/or 3288; and

5  5.  For such other and further relief as the court may deem proper.

6

7  Date:  March 30, 2017                    By:   /s/ Teal O. Miller

8                                                 LAWRANCE A. BOHM, ESQ.
                                                   KELSEY K. CIARIMBOLI, ESQ.
9                                                  ZANE E. HILTON, ESQ.
                                                   TEAL O. MILLER, ESQ.
10

11                                                 Attorneys for Plaintiff,
                                                   ANU CHOPRA
12

13                          **<u>DEMAND FOR JURY TRIAL</u>**

14      Plaintiff hereby demands trial by jury for this matter.

15

16

17

18  Date:  March 30, 2017                    By:   /s/ Teal O. Miller

19                                                 LAWRANCE A. BOHM, ESQ.
                                                   KELSEY K. CIARIMBOLI, ESQ.
20                                                 ZANE E. HILTON, ESQ.
                                                   TEAL O. MILLER, ESQ.
21

22                                                 Attorneys for Plaintiff,
                                                   ANU CHOPRA
23

24

25

26

27

28

**Plaintiff's Verified Complaint for Damages and Demand for Jury Trial**
*Chopra v. County of Sutter*                    Lawrance A. Bohm, Esq.; Kelsey K. Ciarimboli, Esq.
Case No.:                                        Zane E. Hilton, Esq.; Teal O. Miller, Esq.

BOHM LAW GROUP, INC.
4600 NORTHGATE BOULEVARD, SUITE 210
SACRAMENTO, CALIFORNIA 95834

## <u>VERIFICATION OF COMPLAINT FOR DAMAGES</u>

I, ANU CHOPRA, have read the attached Complaint for Damages and hereby attest that the same is true of my own knowledge, except as to those matters, which are therein stated on my information or belief, and as to those matter that I believe it to be true.

I declare under penalty of perjury under to the laws of the State of California that the foregoing is true and correct.

This Verification was executed on _March 30, 2017_, in Chico, CA 95928.

_____
ANU CHOPRA